### McGarr *v.* The State.

1. Objections to the admission of evidence, not stating what the evidence objected to was, cannot be considered.
2. The evidence was sufficient to sustain the conviction, and there was no error in refusing to grant a new trial.
October 24, 1893.                    *Judgment affirmed.*

Accusation of being a common cheat and swindler. Before Judge MacDonell. City court of Savannah. July term, 1893.

The accusation charged, that by falsely and fraudulently representing to George Derst that a check purporting to be signed by W. J. Gibbons, for $51.60,

drawn on the National Bank of Savannah and dated about May 6, 1893, was good and would be paid when presented to the bank, the defendant obtained from Derst the sum of $5, and did thereby defraud and cheat Derst out of that amount. The motion for new trial contained the following grounds:

" 1st. The admission, over the defendant's objection, of secondary evidence as to an alleged fraudulent check, without showing that the same was lost, destroyed, or, if in the hands of the defendant, that notice had been served on him to produce it.

" 2d. The admission, over the defendant's objection, of the evidence of one Snelson as to a certain check not produced but seen by him some time in the spring, in the possession of the defendant, the witness not remembering the date of its presentation to him, the date of the check, the initials of the drawer, or the bank on which it was drawn.

"3d. That the defendant was practically charged and convicted of forgery in a court having no jurisdiction of felonies.

" 4th. Variance between the allegations and the proof, for that the accusation charges that the defendant did defraud and cheat Derst out of $5 (five dollars), whereas Derst testified, and the defendant showed by Derst's receipt, that at the time of his arrest he owed Derst but $2.25 (two dollars and twenty-five cents).

" 5th. That the verdict was contrary to law, contrary to the evidence and wholly unsupported by it, the State having utterly failed to show any intent to defraud, or to establish the identity of the alleged fraudulent paper on which the accusation is founded."

George Derst testified that he was a storekeeper, and at one time McGarr was in the habit of trading with him. In May, 1893, McGarr came to his store with a check for $51.60 on the National Bank of Savannah,

signed by one Gibbons. Derst did not remember the initials of Gibbons or the date of the check. McGarr desired Derst to cash it, stating it was after banking hours and that he needed the money. Derst refused to cash the check. McGarr then requested him to advance $25 on it, which was refused; but finally he let McGarr have $5.25 on it, McGarr to indorse the check and leave it with him for collection. McGarr told him the check was perfectly good and would be paid. This was Saturday afternoon after banking hours. On Monday Derst went to the bank to cash the check, and was refused payment. He went to see McGarr, who told him there must be some mistake about it, and agreed to go to the bank with him to look into it. They drove to the bank, and at the door Derst handed McGarr the check for "presentment." He presented it and payment was refused, they being informed that Gibbons had no account there. They went out, McGarr retaining possession of the check and saying there must be some mistake, that he would go over and see Mr. Stovall who, he knew, did have money in the bank, and that he would make it all right. The two started off in Derst's road-cart, and had not gone far before Derst remembered there was a party he had to see. He got out and told McGarr to stay there and hold the horse until his return. He returned in a few minutes, but McGarr had gone and carried the check with him. Afterwards finding him, Derst told him he did not want to have any more fooling, and that he must have his money. McGarr told him it would be all right, and referred him to Gibbons, a railroad contractor for whom he said he had worked and who had drawn the check. McGarr then left, and Derst drove out to see Gibbons, who told him that McGarr had worked for him, but was not then employed by him, and that he had given him no check on any bank. Derst did not see McGarr for several days afterwards. When he did

see him pass on the other side of the street he followed him, driving the road-cart, but McGarr saw him and eluded him by turning into a narrow lane into which he could not go with the cart. Derst went several times to find him at a house where he was staying, but without success. Finally he came up with him one day in the street, and told him that this thing had gone far enough and he wanted his money. McGarr again assured him it would be all right; upon which he let him go. Several days after this McGarr came to his store and paid him $3 on the amount due, with which he was pretty well satisfied, as he thought he had done well to get anything; did not consider this a settlement of the crime. W. G. Gibbons testified that he was a railroad contractor, and the defendant had worked for him as foreman of his hands. He never had any money in the National Bank of Savannah, and never paid McGarr off in a check on that or any bank. He did not owe McGarr anything, nor have any money in trust or keeping for him. Morgan testified that he was county detective, and arrested McGarr after a chase. When he caught up with him he showed some signs of resistance, but surrendered on Morgan's drawing his pistol on him, saying that if he had his "thirty-eight" along he would not have been taken so easily. Morgan searched him and took from him two papers in the form of bank checks: one dated December 27, 1892, for $25, payable to the order of John W. Crolley, and drawn on the National Bank of Savannah by D. P. Riggan & Co.; the other dated April 17, 1893, for $41, payable to A. M. McGarr or bearer, and drawn on the Savannah Savings Bank by W. G. Gibbons. Snelson testified that he was a colored doctor; that McGarr had approached him some time in the spring and requested him to cash a check, which he refused to do; that the check was drawn by one Gibbons, but that he did not remember

his initials, the date of the check or the bank on which it was drawn, though he believed it was on the National Bank of Savannah. The prisoner stated that he got the money from Derst as a loan, and intended to pay him back but was not able to do so; that to secure the loan he left with Derst a check which was not on Gibbons but on W. G. Riggans, another contractor for whom he had worked; that he did refer Derst to Gibbons because he was a stranger and had worked for Gibbons, not referring to Gibbons as the man who gave him the check, but that Derst might find out who he was; that he tried to avoid Derst because he had no money to pay him, and as soon as he was able he went and paid Derst $3 of the $5.25 due, for which he held his receipt; that he did not know Morgan, and when Morgan arrested him he was in citizen's clothes and did not at first say who he was; hence his attempt at "resentment"; but when the officer drew his pistol and informed him who he was, he offered no further resistance.

ED. R. McKETHAN, for plaintiff in error.
W. W. FRASER, solicitor-general, contra.